UNITED STATES OF AMERICA
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

JANE DOE,

    Plaintiff

v.

MUNISING PUBLIC SCHOOLS,
and in their individual and official capacities,
MIKE TRAVIS, NICOLE LASAK,
and MANDY FRANTTI,

    Defendants.

Case No.

Hon.

Attorneys for Plaintiff:
Nicholas Roumel (P37056)
**ROUMEL LAW**
4101 Thornoaks Dr.
Ann Arbor, MI 48104
(734) 645-7507
nick@roumel-law.com

## COMPLAINT AND JURY DEMAND

Jane Doe, a rising junior at Munising High School, was sexually assaulted at a graduation party for the senior class in May, 2024. Instead of showing concern, or investigating the assault, Defendants punished those who were allegedly drinking alcohol at the party, and expelled Jane from membership in the National Honor Society. Other students who faced consequences blamed Jane, and she was brutally ostracized by the student body during her senior year. She suffered significant mental health struggles and became suicidal. She makes her complaint as follows:

1

## PARTIES, JURSIDICTION, AND VENUE

1. Plaintiff Jane Doe is a resident of Munising Michigan and a former attendee of Munising High School.

2. Jane requests anonymity, and wishes to pursue this case under a pseudonym, due to her status as a victim of sexual assault while she was a minor. On information and belief, Defendants are able to ascertain her true identity from the details in this suit. Plaintiff will file the appropriate motion to formally permit her to proceed through a pseudonym, if necessary and requested by this court.

3. Defendant Munising Public Schools is a school district located in Munising, Michigan.

4. Defendant Mike Travis is the Superintendent of Munising Public Schools. He is sued in his official and individual capacities.

5. Defendant Mandy Frantti is a science and math teacher at Munising Public Schools. She is also an advisor to Munising's National Honor Society Chapter. She is sued in her official and individual capacities.

6. Defendant Nicole Lasak is the principal and athletic director of Munising High School. She is sued in her official and individual capacities.

7. The federal claims asserted are based on violations of 42 USC § 1983 and Title IX of the Education Amendments Act of 1972, 20 USC § 1681 *et seq*.

8. The state claims asserted arise under Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2201 *et seq*. and Michigan common law.

9. Jurisdiction over federal claims is proper pursuant to 28 USC §§1331, 1343(a)(3), 1343(a)(4), 2201 and 2202; with pendent jurisdiction over Michigan statutory and common law claims pursuant to 28 USC § 1367.

10. Venue is proper in the Western District of Michigan because Defendants work in this District, and the events giving rise to this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

### Background

11. In May of 2023, Jane was nearing the end of her junior year at Munising High School. She was an excellent student, achieving a 4.0 grade point average. She was a member of Munising's National Honor Society (NHS) Chapter and planned on attending college after graduation.

12. Munising High School has a small student population. There were around forty students in Jane's class, and most students knew each other very well.

### Jane is Sexually Assaulted and Reports the Incident

13. On May 27th, 2023, Jane attended a graduation party at Mirror Lake in Carp Lake Township, Michigan. The party was widely attended, and many students drank alcohol.

14. At approximately 2:00 AM, Jane was trying to find a place to sleep. A male classmate, "X," offered to let her sleep in the back of his pickup truck. Jane agreed.

15. While in the truck, X sexually assaulted Jane. He rubbed his body on her, kissed her against her will, and touched her breasts, neck, and vagina. Jane told him to stop several times, to no avail.

16. After he eventually fell asleep, Jane ran inside and told a few friends what happened. They helped Jane escape the situation and return home.

17. Jane told her parents what had happened. They took no immediate legal action as Jane was still processing what had happened, and whether to file a police report.

18. Upon returning to school, Jane confided in three Munising High School faculty members about the incident -- her social studies teacher, her science teacher, and a school counselor.

19. Jane asked her teachers at Munising to seat her away from X. Only one teacher honored this request.

### Mike Travis Reports the Incident

20. On June 2nd, 2023, Jane's mother received a call from Superintendent Mike Travis. Travis told her that he had contacted the police to report the incident. He did not ask what Jane's wishes were, nor had she reported the incident herself.

21. The next day, Jane's family received a call from Michigan State Police Trooper Kinnenun, who requested to interview Jane.

22. Jane was interviewed by Trooper Kinnenun the following day. During the interview, she recounted going to the party, being sexually assaulted, and then escaping the situation.

23. In relating the details, Jane mentioned that she was drinking at the party. Trooper Kinnenun assured her that no citations would be given and that the police were only focused on the sexual assault.

24. Several other people were interviewed by the police including Munising faculty members and other students who had attended the party. Through his mother on the advice of his counsel, the classmate who sexually assaulted Jane declined to be interviewed.

25.    On August 21, 2023, the Alger County Prosecutor informed police that no charges would be pursued due to a lack of evidence.

### Munising Faculty Ignore the Sexual Assault, but Zealously Investigate The Use of Alcohol at the Off-Campus Party

26.    Munising did nothing to investigate the sexual assault. Travis justified this by stating that the sexual assault took place off-campus.

27.    However, the off-campus and out of the school district location of the party did not deter Superintendent Travis from zealously investigating the alleged underaged drinking.

28.    Travis contacted the Alger County Prosecutor's Office for the specific purpose of obtaining a list of students suspected of drinking.

29.    The Prosecutor's Office complied in a letter dated August 21, 2023, which stated:

August 21, 2023

Superintendent Mike Travis
810 W. State Highway M-28
Munising, MI 49862
Mike.travis@mps-up.com

RE: May 27, 2023 Student Alcohol Consumption

Dear Mr. Travis,

This letter is in response to your inquiry regarding a party on May 27, 2023 that involved minor MPS students and the consumption of alcohol. Specifically, you requested documentation as to which students were present and potentially engaged in illegal alcohol use. Here is what you requested:



- 
- 
- Cienna Schultz
- 
- 
- 
- 

The party took place at a residence in AuTrain Township belonging to ▬▬▬▬. The matter remains under investigation and this information should be treated with sensitivity.

It is important to note that this list documents who was present and *suspected* of consuming alcohol. This list may not be exhaustive, but is accurate according to the best evidence available.

Signed,

Robert T. Steinhoff
Alger County Prosecutor

30.     These names were obtained as a result of the investigation into the sexual assault against Jane. Travis' intent was not to investigate the sexual assault, but the alleged underaged drinking.

31.     In August 2023, Superintendent Travis instructed Principal Nicole Lasak to contact the Doe and her parents. Lasak showed up at Jane's father's place of business, where Jane also worked. Lasak gave Jane the list of students and pressured her to confirm they were drinking. Jane truthfully told Lasak she couldn't say for certain who was drinking.

32. On August 23, 2023, Superintendent Travis emailed several administrators revealing that he had information about underage students drinking at a graduation party. He wrote that student-athletes would face suspension, and that NHS students would also face consequences.

33. Travis ended the email telling the recipients "Do not reply to this email. Please call me if you have any questions."

34. The next day, Principal Lasak sent an email to NHS Advisor Mandy Frantti, informing her that Jane and one other NHS student were suspected of drinking at the party.

35. Student-athletes accused of drinking were suspended for 20% of their teams' upcoming seasons.

**Jane is Kicked Out of NHS**

36. In early September 2023, when school was back in session, Jane learned that her name was not on the NHS list. Jane had been given no prior warnings that her status in NHS was in jeopardy.

37. On September 13, 2023, Jane's family called Principal Lasak and asked why Jane was removed from NHS. Lasak told the family that she would speak with NHS Advisor Frantti and get back to them.

38. The next day, September 14, 2023, the family was given a letter backdated to September 8, signed by Frantti, formally dismissing Jane from NHS. It stated in part: *"I personally hope that this will be accepted as a lesson learned rather than a punishment."*

39. Jane's mother contacted the school to contest the letter and to question why it had been issued without warning or an opportunity to contest it, and why it had been backdated. Lasak corrected the date of the letter, but not the decision itself.

**Jane is Denied Due Process**

40. Before Jane was provided notice of being dismissed from the National Honor Society, on September 12, 2023, Superintendent Travis emailed Frantti and Lasak, urging them to review the NHS handbook for the proper procedure. He said that "ensuring we provide due process is important." Still, Frantti, Lasak, and Munising denied Jane due process at every turn.

41. Section 4 of Article X of the NHS Handbook states "In all cases of pending dismissal, a member shall have the right to a hearing before the faculty council (Note: This hearing is required and is considered "due process" for all members.)"

42. In this case, Jane never received notice, much less a hearing, before being dismissed from NHS.

43. She also learned that the decision had been made without a meeting of the NHS Boad Members. Section 5 of Article X of the NHS Handbook states "For purposes of a dismissal, a majority vote of the faculty council is required."

44. Travis, Lasak, and Frantti knew that Jane was denied notice and an opportunity for hearing, and that she was dismissed in violation of the procedures in the Handbook.

45. On September 14, 2023, Frantti sent a text message admitting there had been no hearing. She wrote, "Looks like they were going to make a fuss about the committee not meeting face-to-face, so we're going to do that in the morning."

46. Jane requested a hearing with the NHS Advisory Board to ask them to reconsider her dismissal from NHS. A meeting with the family was held September 25th, at which time the Defendants refused to tell Jane's family how the names of students at the party came to be provided to them.

### The Advisory Board Votes to Remove Jane

47. On September 28, 2023, NHS Advisor Frantti, Principal Lasak, Superintendent Travis, and other school administrators met to discuss Jane's situation. They determined that they would not reinstate Jane to NHS and would use national bylaws to justify their decision.

48. Frantti complained about the amount of time and attention devoted to this matter. In a September 28th email to Principal Lasak, she wrote, "The fact that we have to have a meeting before the hearing for both parties is ridiculous."

49. Jane and her family asked Frantti possible exception to the dismissal rules for a student who was a victim. Frantti brushed this off saying "That aren't going to do it. I can say I asked, and that's the end of it."

50. On October 25, 2023, Jane's family received a letter from Frantti affirming Jane's dismissal from NHS. Frantti's letter says, "If we ignore the fact that you made the decision to do something that is illegal, there is no way to justify any past dismissals and any possible dismissals in the future...We realize that everyone makes mistakes, but also know that there are consequences for those mistakes."

### Jane's Senior Year Was a Nightmare

51. Because of these events, Jane's senior year in high school was a miserable experience.

52. Students who were punished for drinking at the party blamed Jane. They sided with X, the boy who assaulted her, who went from being a socially average boy to one of the most popular students, while Jane was ostracized.

53. Jane asked her teachers not to seat her near X and to have different classes than him when possible. Instead, they kept X in their math class, while assigning Jane to an online class.

54. Jane requested that she be placed in a different lunch period than X. Defendants ignored this and placed them in the same lunch period. X ended up sitting at the table right next to Jane.

55. In particular, the student athletes suspended from athletic teams blamed Jane for reporting her sexual assault to the police. They said she lied about what happened and turned in students who were drinking.

56. This led to Jane being bullied by classmates. Classmates called her a "whore" who "deserved to be assaulted."

57. Jane and her family pleaded with both Lasak and Travis to rectify this situation, but Defendants did nothing to stop this speculation. Instead, Lasak told Jane that there was nothing she could do about the situation as it was just "teenage drama."

58. Students ended their friendships with Jane and refused to include her in activities. Jane was not invited to her senior prom and was told by classmates not to come to her senior homecoming. Feeling unwelcome, Jane quit drama club, an activity she had previously enjoyed.

59. As a result of these events, Jane began to have suicidal thoughts. Her parents reached out to the school about finding a new counselor for Jane to see. The school never followed up.

60. In addition to emotional damages, Jane's academic career also suffered. Her removal from NHS hurt her college applications and scholarship opportunities.

61. Jane's grades also fell. Despite her teachers giving her grace for most of her senior year, she could not maintain her 4.0 after what she had gone through. Jane lost out on being the salutatorian.

## LEGAL ALLEGATIONS

**COUNT I – 42 U.S.C. §1983 Sex Harassment/Equal Protection (Individual Defendants)**

62. Plaintiff had a constitutional right to equal protection of the law, and to be free from harassment based on her sex, including sexual assault.

63. Defendants' actions and omissions, deprived Plaintiff of her constitutional rights, including but not limited to:

* their refusal to investigate the sexual assault but seeking to punish those who had been drinking at the off-campus party;

* their refusal to follow established policies or provide due process regarding Jane's dismissal from NHS;

* failing to separate her from X;

* failing to address the subsequent retaliation against Plaintiff.

64. Defendants' actions and omissions in depriving Plaintiff of her constitutional rights damaged her as alleged herein and below.

65. Defendants' actions and omissions, resulting in the deprivation of Plaintiff's constitutional rights, resulted from a policy or custom of failing to investigate sexual assaults, failing to enforce protective measures and/or protect against bullying and/or retaliation, and the permissive and/or express policy of retaliating against student victims.

66. Defendants are liable to Plaintiff under 42 U.S.C. §1983, for violation of Plaintiff's 14th Amendment right to equal protection of law as described herein.

67. Defendants are not immune from liability under this theory inasmuch as Defendants acted intentionally or grossly negligently, and/or in a manner that was deliberately indifferent to Jane's rights.

68. As a result of Defendants' actions, Plaintiff suffered damages as described herein and below.

### COUNT II – Title IX Gender Discrimination and Retaliation (All Defendants)

69. Defendants are federally funded and therefore subject to the duties and protections of Title IX.

70. Plaintiff suffered harassment because of her female gender.

71. The harassment was so severe and offensive that it deprived Plaintiff of educational opportunities and benefits provided by Munising Public Schools.

72. Defendants had actual knowledge of the harassment and did not take steps to prevent it.

73. The harassment included academic and social retaliation against the reporting victim and her family.

74. As a result of Defendants' actions, Plaintiff suffered damages as described herein and below.

### COUNT III – First Amendment Retaliation (Individual Defendants)

75. Plaintiff exercised her First Amendment right regarding a matter of public concern when she made her disclosures of sexual assault and underage drinking to Munising school officials and local police, as described above.

76. Plaintiff's protected speech caused neither a material nor substantial disruption to the District. If anything, it was Travis' subsequent actions that caused disruption at the school.

77. Defendants' adverse employment actions against Jane were in retaliation for her exercise of her First Amendment rights.

78. This retaliation against Plaintiff violated her right to be free from punishment or retaliation for exercising her First Amendment rights, under the 14th Amendment to the U.S. Constitution, codified by 42 USC § 1983.

79. At all times relevant, Jane had a clearly established right to freedom of speech of which a reasonable public official would have known.

80. Because the individual defendants violated constitutional rights about which a reasonable public official should have known about, he is not entitled to governmental immunity in either his official or individual capacity.

81. These individual defendants, by their conduct as described above, showed intentional, outrageous, and reckless disregard for Plaintiff's First Amendment rights, and acted out of vindictiveness, malice and ill will towards Plaintiff, and bias and animus, with intent to punish Plaintiff for and to deter her from exercising those rights.

### COUNT IV – Elliot-Larson Civil Rights Act
### Sex Harassment and Retaliation (All Defendants)

82. Munising High School is a place of public accommodation, a public service, and an educational institution as defined in Michigan's Elliot-Larson Civil Rights Act (ELCRA).

83. Defendants Travis, Lasak, and Frantti are agents of Munising Public Schools.

84. Defendants violated the ELCRA by denying Plaintiff the full benefit of the educational program at Munising High School based on her gender, and by allowing and failing to stop the harassment against Plaintiff by people under Defendants' control.

85. As a result of Defendants' actions, Plaintiff suffered damages as alleged herein and below.

86. As a proximate cause and/or consequence of Defendants' conduct and actions, Jane suffered actual and/or consequential damages including but not limited to the following:

    a.    emotional distress and/or loss of hedonic value of life;

    b.    public embarrassment, anger, anxiety and depression;

    c.    medical and counseling costs;

    d.    loss of honors and other educational opportunities at school attendant especially to her senior year at Munising High School;

    e.    predictable loss of future economic opportunities due to reduced educational opportunity.

87. Defendants' actions were made with reckless disregard to Plaintiff's legal and civil rights and warrant imposition of the greatest possible combination of punitive, emotional distress and exemplary damages, as allowed by law.

## JURY DEMAND

Plaintiff demands a jury trial.

## RELIEF REQUESTED

*W H E R E F O R E*, Plaintiff Jane Doe, prays for a judgment against each of the Defendants, along with interest, attorney fees and costs, and whatever declaratory and other relief this Court deems necessary and appropriate to enforce Plaintiff's constitutional rights.

Respectfully submitted,

**ROUMEL LAW**

*s/Nicholas Roumel*

Nicholas Roumel
Attorneys for Plaintiff

May 18, 2025

14